PER CURIAM, January 3, 1893, in each case:

This case is ruled by Commonwealth v. Matthews, just decided.

Judgment affirmed.


# Commonwealth, to use, *v.* Shirley, Appellant.

[Marked to be reported.]

*Oleomargarine—Constitutional law—Act of May* 21, 1885.

The act of May 21, 1885, P. L. 22, entitled "An act for the protection of public health, and to prevent the adulteration of dairy products, and fraud in the sale thereof," is constitutional: Powell v. Com., 114 Pa. 265, reaffirmed.

*Multiplying penalties—Maximum penalty—Review.*

It seems that the sale of oleomargarine and the subsequent exposure of it for sale on the same day are not separate offences for which a double penalty can be imposed under the act of May 21, 1885.

If, however, the double penalty imposed by the court is less than the maximum fine for the one offence as provided by the act, the Supreme Court will not reverse the judgment.

Argued Nov. 4, 1892.    Appeal, No. 276, Oct. T., 1892, by defendant, C. E. Shirley, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 620, in favor of Commonwealth to use of G. W. Russ and Allegheny county, on case-stated. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The case-stated was in part as follows:

"It is admitted that on the 21st of December, 1891, the defendant did, in the county of Allegheny, have in his possession with intent to sell, did expose for sale and did sell one pound of oleomargarine as an article of food, which was manufactured as follows, to wit: [Omitted, as unimportant to the decision.]

"The oleomargarine butter manufactured as aforesaid and sold by the defendant is a wholesome article of food, and there is a large demand for it in the retail market as a substitute for dairy butter. Upwards of four hundred persons being now licensed to deal in the same at retail in this federal internal revenue district. So much thereof as was sold by the defendant was manufactured in the manner aforesaid, in the state of

Illinois, where it is lawful to manufacture and sell the same, and every pound was duly accounted for to the government of the United States.  The same was brought into the state of Pennsylvania in a package having permanently painted thereon with black paint the words ' Oleomargarine Butter,' in Roman letters, not less than one half inch in length, in a straight line, where the same could be plainly seen, and the defendant made sale thereof from said package marked as aforesaid, after said package had been broken and the contents thereof separated for sale at retail.

" Said oleomargarine butter, as distinguished from dairy butter, was a well known article of food, in the state of Pennsylvania, at, and long prior to, the passage of the act of May 21, 1885, entitled ' An act for the protection of the public health, and to prevent adulteration of dairy products and fraud in the sale thereof,' and a large class of the citizens of said state were engaged in the manufacture and sale thereof, and there was an extensive demand therefor, as there is still, among the inhabitants of said state.

" The aforesaid article, known as oleomargarine butter, is in no way injurious to the public health, or to the health of persons using the same as an article of food, the said substance being designed to take the place of butter produced from pure unadulterated milk, or cream from the same.

" And that on the day and year aforesaid at the county aforesaid after the aforesaid sale the defendant had other of the same substance in his possession, with intent to sell and exposed the same for sale as an article of food."

The court entered judgment against defendant, in the following opinion by PORTER, J.:

[" The constitutionality of the act of assembly upon which this action is based, having been already passed upon by the Supreme Court of the commonwealth, we must hold the legislation to be valid.] [1]   [We are of opinion that one sale of oleomargarine constituted one complete offence, and the subsequent exposure of the substance for sale rendered the defendant liable to a second penalty.] [2]   We, therefore, order judgment against the defendant in the sum of two hundred dollars.

[" And now, Sept. 21, 1892, it is ordered that judgment be entered upon the case-stated in favor of the plaintiff and

against the defendant in the sum of two hundred dollars ($200) with costs."] [3]

*Errors assigned* were (1–3) portions of opinion in brackets, quoting them.

*Henry A. Davis, D. F. Patterson* with him, for appellant.— The act of May 21, 1885, violates art. 3, § 3, of the constitution, providing that a bill shall not be passed containing more than one subject, which shall be clearly expressed in the title : Dorsey's Ap., 72 Pa. 192; Phœnixville Road, 109 Pa. 48; Union Pass. Ry. Co.'s Ap., 81*Pa. 91 ; Beckert v. Allegheny, 85 Pa. 191; Rogers v. Improvement Co., 109 Pa. 109; Sewickley Boro. v. Sholes, 118 Pa. 165 ; Pierie v. Phila., 139 Pa. 573 ; Hatfield v. Com., 120 Pa. 295 ; Com. v. Frantz, 135 Pa. 389.

*A. Blakeley*, for appellee.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893 :

The constitutionality of the act of assembly, approved May 21, 1885, P. L. 22, entitled " An act for the protection of public health, and to prevent the adulteration of dairy products, and fraud in the sale thereof," was settled by Powell v. The Commonwealth, 114 Pa. 265. While we listened patiently to an elaborate discussion of the same question in this case, we are not disposed to go over it again, or to reopen the subject. It remains to consider whether the judgment entered against the defendant was justified by the facts set forth in the case-stated.

A large portion of the case-stated is taken up with the description of the article, called oleomargarine, and the process of its manufacture. All this was entirely irrelevant to the matter before the court. The act of assembly having prohibited its manufacture and sale, it is immaterial of what it is composed, or how made. It further appears that the oleomargarine, sold and kept on sale by the defendant, was manufactured in the state of Illinois, where it is lawful to manufacture and sell the same, and that every pound thereof was duly accounted for to the government of the United States. The same was brought into the state of Pennsylvania in a package plainly marked " Oleomargarine Butter." It also appears that after said package was brought into said state, it had been broken, and the contents separated for the purpose of retail.

From the case-stated it further appears that on the 21st day of December, A. D. 1891, the defendant did, in the county of Allegheny, have in his possession with intent to sell, and did expose for sale and did sell, one pound of oleomargarine as an article of food.   And that on the day and year aforesaid at the county aforesaid, after the aforesaid sale, the defendant had other of the same substance in his possession with intent to sell, and exposed the same for sale as an article of food.

Upon this state of facts the court below entered judgment in favor of the commonwealth, and against the defendant in the sum of two hundred dollars and costs.

This suit was brought in the court below to recover the penalty provided by the act of 1885, before mentioned, for the sale of oleomargarine.   It is enacted by the first section of said act: " That no person, firm or corporate body shall manufacture out of any oleaginous substance, or any compound of the same, other than produced from unadulterated milk or from cream from the same, any article designed to take the place of butter or cheese, produced from pure or unadulterated milk, or cream from the same, or of any imitation or adulterated butter or cheese, nor shall sell or offer for sale, or have in his, her or their possession with intent to sell the same as an article of food."

Section four of the same act provides that " Every person who violates the provisions of the first section of this act shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than one hundred dollars, nor more than three hundred, or by imprisonment in the county jail for not less than ten, or more than thirty days, or both such fine and imprisonment for the first offence, and imprisonment for one year for every subsequent offence."

The learned judge below gave judgment upon the theory that one sale of oleomargarine was a completed offence, and that the subsequent exposure of the substance for sale rendered the defendant liable to a second penalty.   He therefore gave judgment against the defendant for the sum of two hundred dollars.

The correctness of this proposition may well be doubted. It is true, the sale of the article on the day referred to constituted a complete offence, and had the case-stated set forth the fact, that upon a subsequent day the defendant exposed the

like article for sale, it would have constituted another and complete offence. It appears, however, that all this occurred upon the same day. The exposure of it resulted in a sale, and for this sale the defendant was properly fined. It is not the policy of the law to multiply penalties, and we do not think the defendant can be punished both for exposing for sale, and for selling on the same day, when, as here, it appeared to be a single transaction.

It will be noticed, however, that by the fourth section of the act of 1885, before referred to, the defendant was liable to the maximum fine of three hundred dollars, for the one offence of the sale of oleomargarine. It follows that the judgment of two hundred dollars was authorized by the act. The judgment being lawful, we cannot reverse it, although an erroneous reason may have been given by the learned judge below for imposing it.

Judgment affirmed.

(See, also, the next case.)